# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**MATTHEW RICHARD,**
           **Petitioner,**

     v.                                                        **Case No. 10-C-0095**

**MICHAEL THURMER, Warden**
**Waupun Correctional Institution,**
           **Respondent.**

---

## DECISION AND ORDER

Wisconsin state prisoner Matthew N. Richard, appearing pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 2007 state court conviction of intentional homicide and related offenses on the ground that his trial lawyers were ineffective. Petitioner unsuccessfully sought state post-conviction relief and then appealed. The state court of appeals affirmed his conviction, and the state supreme court declined review. I may grant petitioner's application only if the decision of the state court of appeals was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

The state court of appeals summarized the facts of the case as follows:

> The underlying facts are that around 10:00 p.m. on September 13, 2006, Velazquez's boyfriend, Gualberto Gonzalez, returned a call to Richard. After Gonzalez called Richard, Richard and two other men arrived at the residence where Velazquez and Gonzalez were staying to purchase Gonzalez's vehicle. According to Velazquez, Richard wanted Gonzalez to follow him so that Richard could get money and drugs to be used as payment for the vehicle. Gonzalez asked Velazquez to accompany him as he followed Richard in a separate vehicle, and she agreed. They eventually ended up in an alleyway where Richard got out of his vehicle and came to

the driver's side of the vehicle Gonzalez and Velazquez were driving. After a conversation, Velazquez noticed Richard lean down slightly and stand up with a gun in his hand. Richard fired four shots. One shattered the window next to Velazquez, one hit her arm, one hit her head, and one hit Gonzalez.

Velazquez waited to hear Richard leave before she drove to the hospital. As she was driving toward the hospital, she noticed a police van with its lights off and stopped to ask for help. According to Velazquez, the officer in the police van refused to help and told her to continue to the hospital. As relayed by the State, the officer was later identified and dismissed by the police department.

Before she knew Gonzalez was dead, Velazquez told the police that the initial purpose of the meeting with Richard was to sell a car stereo, but later admitted that it was both for the sale of a vehicle and for a drug purchase. She testified that she did not mention the drugs at first because she did not want to get Gonzalez in trouble.

James Howard, an acquaintance of Richard, was a new witness for the State in the second trial. [Richard's first trial resulted in a mistrial.] At the time he testified, Howard was being held in custody on three felony charges. He testified that Richard called him looking for a handgun before meeting with Gonzalez. Howard said Richard told him he wanted a gun "to take out someone who he believed was setting him up with the police." Howard also suggested Richard may have received his handgun from Jimmy Cruz. Cruz exercised his Fifth Amendment right not to incriminate himself and did not testify during Richard's trial. Two of the charges against Howard were ultimately disposed of without prosecution.

Detective Chavez, the lead detective in this case, interviewed Velazquez and Howard before the trial. Velazquez gave Chavez two possible locations for where the vehicle that Gonzalez intended to sell to Richard might be located. Chavez testified to finding the vehicle in one of the specified locations. Chavez also testified that he told Howard he would seek some form of consideration for the charges pending against Howard in exchange for Howard's cooperation with the State's case against Richard.

The jury found Richard guilty of intentional and attempted first-degree homicide while armed, and possession of a firearm by a felon. Afterward, Richard brought a postconviction motion seeking a Machner hearing[1] based

---

[1] In Wisconsin, a Machner hearing is an evidentiary hearing to determine counsel's effectiveness. State v. Machner, 92 Wis. 2d 797, 804 (Ct. App. 1979).

> on ineffective assistance of trial counsel. The trial court denied Richard's petition for a Machner hearing.

(Answer Ex. B at 3-5.)

Petitioner argues that the state court of appeals unreasonably applied Strickland v. Washington, 466 U.S. 668, 687-89 (1984), which requires him to show that his counsel performed deficiently and that he was prejudiced as a result. To show that counsel performed deficiently, petitioner must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. at 687. To show that he was prejudiced as a result, petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. I now turn to petitioner's specific claims.

Petitioner first claims that his lawyers were ineffective for failing to interview Velazquez before trial. The state court of appeals offered various reasons why petitioner's counsel might not have interviewed Velazquez. However, even if I assume that the court of appeals unreasonably concluded that counsel did not perform deficiently by not interviewing Velazquez, petitioner fails to establish that the court's conclusion that he was not prejudiced as a result was unreasonable. Petitioner acknowledges that he does not know what an interview "would have revealed." (Pet'r's Br. at 11.) Also, petitioner's counsel had already cross-examined Velazquez at a preliminary hearing and at petitioner's first trial, and thus he was already familiar with her testimony. Finally, as the court of appeals pointed out, petitioner's counsel effectively cross-examined Velazquez:

3

> Counsel's cross-examination of Velazquez takes up fourteen pages of the transcript and addresses discrepancies in her previous statements. During the cross-examination, Velazquez admitted that she lied about Gonzalez's drug dealing, acknowledged that she initially failed to mention to the police the fact that Richard was on crutches at the time of the incident, and claimed that she never told Detective Chavez that the vehicle for sale was parked somewhere other than her residence.

(Answer Ex. B at 7.) Thus, I cannot say that the state court's conclusion that counsel's failure to interview Velazquez did not result in prejudice was unreasonable.

Petitioner next claims that his trial lawyers were ineffective for failing to take the steps necessary to have the phone records of Gonzalez's mother admitted into evidence. Defense counsel had planned on introducing the phone records to undermine Velazquez's claim that, in arranging the sale of the vehicle, Richard had called Gonzalez's mother and that Gonzalez then returned Richard's call using his mother's phone. However, defense counsel failed to subpoena a witness from the phone company who could authenticate the records, and thus the judge refused to admit them at trial. Nonetheless, defense counsel was able to use Richard's phone records (which were properly authenticated) to show that no phone calls were made from Richard to Gonzalez's mother's house, and that therefore Velazquez's story was not consistent with what the phone records revealed.

Even assuming that defense counsel's failure to properly authenticate Gonzalez's mother's phone records was deficient performance, the state court reasonably concluded that this failure was not prejudicial. As noted, defense counsel used Richard's phone records to establish that Richard did not call Gonzalez's mother, as Velazquez had claimed. Further, the prosecutor did not try to rehabilitate Velazquez's testimony by arguing that Velazquez was simply mistaken about the initial call from Richard, and that

4

Gonzalez nonetheless called Richard from his mother's house. Accordingly, counsel did not need to use Gonzalez's mother's phone records to undermine any such argument.

Petitioner next claims that his lawyers were ineffective for failing to fully investigate Velazquez's assertion that the police officer driving the police van declined to help her. Petitioner contends that this aspect of Velazquez's story is highly unusual, and that if counsel could have created doubt in the jury's mind as to whether it had really happened, the jury might have concluded that Velazquez was lying and trying to frame petitioner. Petitioner faults defense counsel for failing to know the precise status of the Milwaukee police department's investigation into Velazquez's allegation. This is because, at trial, Detective Chavez testified that the investigation was ongoing and that an officer had been placed on desk duty. Petitioner contends that had counsel conducted a more complete investigation, he would have discovered that, in fact, no officer had been placed on desk duty as of the time of trial and that therefore Chavez's testimony was false. Petitioner further argues that defense counsel should have had the accused officer, Manuel Torres, testify at trial because that officer later denied Velazquez's allegations. (The City of Milwaukee Board of Fire and Police Commissioners eventually terminated Torres after determining that he had, in fact, failed to assist Velazquez.)

Regarding petitioner's claim that counsel should have contradicted Chavez's statement about an officer having been placed on desk duty, nothing in the record indicates that this statement was false. Although petitioner points to the findings of the Board of Fire and Police Commissioners, which indicate that Velazquez was not able to positively identify Torres from a photo array until after Richard's trial, this finding is not inconsistent with Torres (or some other officer) having been placed on desk duty prior to

the trial, since some officer could have been the subject of the investigation and on desk duty prior to the time that Velazquez identified Torres as the officer who refused to help her. Thus, petitioner has not established that counsel's failure to investigate this issue prejudiced his defense.

Further, as petitioner concedes, at the time of trial Velazquez had not yet identified any specific person as the officer who had refused to help her. Thus, having Torres (or any other officer) take the stand to deny that he or she was the officer who refused to help Velazquez would have been meaningless. The most that defense counsel could have done was argue that Velazquez's story about the officer failing to help her was far-fetched and that the state could not prove that it actually happened. Defense counsel did in fact make this argument, and thus the state court reasonably concluded that counsel's failure to conduct a further investigation into the matter was not prejudicial.

Petitioner also contends that his trial lawyers were ineffective by not seeking to impeach Velazquez with autopsy evidence. However, petitioner defaulted this claim by not presenting it to the state courts. Lewis v. Sternes, 390 F.3d 1019, 1025-26 (7th Cir. 2004). He does not attempt to show cause and prejudice.

Petitioner next claims that his trial lawyers were deficient by failing to interview James Howard. However, petitioner concedes that no one knows what an interview with Howard would have revealed (Pet'r's Br. at 26), and so petitioner has not shown that the failure to interview Howard caused him prejudice.

Petitioner also argues that defense counsel failed to effectively impeach Howard's testimony. First, petitioner contends that defense counsel failed to impeach Howard with the fact that the state apparently dropped two out of three drug charges against him in

exchange for his testimony. However, both the prosecution and defense made it clear at trial that Howard was testifying in exchange for leniency on the drug charges. Thus, the state court reasonably concluded that defense counsel's failure to specifically mention the two dropped charges was not prejudicial.[2] Second, petitioner contends that defense counsel should have impeached Howard with evidence indicating that Howard was angry with petitioner because petitioner had previously refused to lend money to Howard. However, the state court reasonably concluded that there was no reasonable probability that, had defense counsel attempted to impeach Howard on this basis, the result of the trial would have been different. Counsel had already made clear that Howard was testifying in exchange for leniency on the drug charges, and so the jury knew that Howard had a motive to lie. The additional impeachment value that would have come from showing that Howard was upset over petitioner's refusal to lend him money is not great enough to create a reasonable probability of a different outcome.

Petitioner also contends that defense counsel failed to point out that Howard's testimony about phone calls he had with petitioner was inconsistent with what the phone records revealed. Howard testified that he remembers petitioner calling him twice after midnight on the morning of the shooting, September 14th. Howard testified that, during the first call, petitioner asked him for a handgun so that he could "take out a snitch." Howard told petitioner that he did not have a handgun. Howard then testified that some time later that morning, supposedly after the shooting had occurred, petitioner called back and asked

---

[2]Petitioner also argues that defense counsel should have emphasized that if Howard was convicted of the drug charges he likely would have lost custody of his children. However, petitioner did not raise this argument in state court, and thus he has procedurally defaulted it. See Lewis, 390 F.3d at 1025-26.

7

Howard whether he had heard anything on his police scanner, and Howard told him that he had not. Petitioner argues that defense counsel should have impeached this testimony with petitioner's own phone records, which show that petitioner had only one phone conversation with Howard that lasted longer than five seconds on the morning of the shooting – a call placed shortly after midnight that lasted eighty-one seconds. Petitioner argues that although this eighty-one second call could have been the call during which he asked Howard for a gun, the phone records do not show any call that could have been the post-shooting call in which petitioner supposedly asked Howard whether he had heard anything over his police scanner.

Petitioner is correct that his phone records do not show any call to Howard during the early morning hours of September 14th that could have been the call about the police scanner.[3] But there was a call that lasted forty-six seconds that occurred at 2:36 p.m. on the afternoon of September 14th. It may be that this was when the call about the police scanner occurred and that Howard was simply mistaken about the time. Indeed, Howard testified that he was not sure when the second call occurred. Nonetheless, defense counsel could have pointed out this discrepancy in an effort to show that Howard's story was not entirely consistent with the phone records. But I cannot say that counsel's failure to make this point resulted in prejudice under the second prong of Strickland. The phone records supported Howard's claim that petitioner had called him and asked him for a gun, and that Howard had a second conversation with petitioner after the shooting about what

---

[3]Respondent argues that the phone records show a twenty-seven second call to Howard that occurred at 2:45 a.m. However, Howard testified that his phone number was 414-467-9626, and petitioner's phone records do not show any call to this number at 2:45 a.m.

8

he might have heard on the police scanner. While the records would have shown that Howard was wrong about the timing of the second call, I cannot say that there is a reasonable probability that, had the jury been informed about this fact, the result of the proceeding would have been different.

Finally, petitioner contends that his trial lawyers were ineffective for failing to interview Jimmy Cruz. On this matter, the court of appeals concluded as follows:

> Richard further contends that his trial counsel was ineffective for failing to interview Cruz. Cruz never testified at trial because he exercised his Fifth Amendment right not to incriminate himself. Richard has not provided any information as to what his counsel could have discovered by interviewing Cruz. Consequently, we fail to see how trial counsel's failure to interview Cruz before trial constitutes ineffective assistance given that counsel would not have been able to impeach Cruz on the stand.

(Answer Ex. B at 11.) In this court, petitioner again fails to offer any indication as to what an interview with Cruz would have revealed. Thus, petitioner had not shown that the state court unreasonably determined that counsel's failure to interview Cruz did not constitute ineffective assistance.

Petitioner also contends that even if none of the errors committed by trial counsel amounts to prejudice when considered alone, the cumulative effect of the errors was sufficiently prejudicial so as to undermine confidence in the outcome of his trial. However, whether counsel's errors are considered individually or cumulatively, I cannot say that the state court unreasonably applied Strickland in concluding that there is no reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. Thus, petitioner has not shown that the state court decision was contrary to, or involved an unreasonable application of, clearly established Supreme Court law.

9

**THEREFORE, IT IS ORDERED** that the petition is **DENIED**, and this case is **DISMISSED**. Pursuant to Rule 11 of the Rules Governing § 2254 Cases, I find that petitioner has not made the showing required by 28 U.S.C. § 2253(c)(2), and therefore I will not issue a certificate of appealability.

Dated at Milwaukee, Wisconsin, this 3rd day of September, 2010.

/s_____
LYNN ADELMAN
District Judge